# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATE OF AMERICA, ex rel. ROLAND P. MARQUIS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 09 C 7704 ) |
| NORTHROP GRUMMAN CORPORATION, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Northrop Grumman Corporation's (Northrop) motion to dismiss. For the reasons stated below, the motion to dismiss is granted.

## BACKGROUND

Plaintiff Roland P. Marquis (Marquis) alleges that he was employed by Northrop as Director of the United States Air Force Quick Reaction Capability Support Center (QRC) from 1991 until April 2009. In April 2002, Northrop allegedly entered into a Statement of Work for the Continuation of the QRC (Contract). The Contract allegedly required, among other things, (1) the QRC to

operate for the exclusive support of the systems assigned to the Contract (Exclusivity Clause), and (2) QRC program managers to be under the direction of a Director. Marquis alleges that Northrop violated the Contract by failing to honor the Exclusivity Clause, and by failing to assign management of the QRC programs to a Director who reported directly to a Vice President. Marquis also alleges that Northrop charged the Contract for work performed in violation of the Contract.

According to Marquis, under the organizational structure in place when the Contract was entered, a Director was one reporting level below a Vice President. Marquis alleges that around October of 2006, a reorganization occurred that placed Marquis, a Director, two reporting levels below a Vice President. Marquis allegedly informed Northrop around the same time of the October 2006 reorganization that he believed Northrop was violating the Exclusivity Clause of the Contract by having the QRC engage in certain research and marketing efforts.

Between January 2007 and April of 2009, Marquis allegedly continued to inform Northrop that he believed Northrop was violating the Contract. In January of 2007, Marquis also allegedly informed USAF personnel of the activities that he believed violated the Contract. Around June 2008, another reorganization allegedly occurred, and Marquis was allegedly "effectively demoted" to three reporting levels below a Vice President. (SA Compl. Par 42). Shortly thereafter, Marquis allegedly notified Northrop that the June 2008 reorganization violated the terms of the Contract. Around the same time, a QRC staff member allegedly informed the USAF of the new reporting structure. In July 2008, Marquis also allegedly informed the

USAF of the June 2008 reorganization. Marquis claims that he continued to report the alleged Contract violations to Northrop until April 10, 2009, when Marquis was allegedly terminated.

On December 11, 2009, Marquis filed a complaint in the instant action. On October 15, 2012, the United State gave notice of its decision not to intervene. On November 8, 2012, Marquis filed a Second Amended Complaint, which the court notes is actually a First Amended Complaint. Marquis includes in the Second Amended Complaint a claim alleging violations of the False Claims Act (FCA), 31 U.S.C. § 3729 *et. seq.* (Count I), a FCA retaliation claim (Count II), and a common law retaliatory discharge claim (Count III). Northrop has moved to dismiss Counts I and II, and argues that the court should decline to exercise supplemental jurisdiction over Count III.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a

'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

## DISCUSSION

Northrop argues that Counts I and II should be dismissed, and that the court should decline to exercise supplemental jurisdiction over Count III.

I.  Count I

    A.  Government Knowledge

Northrop argues that the FCA claim brought in Count I should be dismissed because Marquis has alleged that the Government paid Northrop under the Contract after being notified of the purported Contract violations.  Pursuant to the FCA, it is unlawful to "knowingly present[], or cause[] to be presented, a false or fraudulent claim for payment or approval" to the United States Government, or to "knowingly

4

make[], use[], or cause[] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3792(a)(1)(A); 31 U.S.C. § 3792(a)(1)(B). However, "[t]he [G]overnment's prior knowledge of an allegedly false claim can vitiate a FCA action." *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 544-45 (7th Cir. 1999). Specifically, the Government's knowledge and approval "of the particulars of a claim for payment before that claim is presented . . . effectively negates the fraud or falsity required by the FCA." *Id.* at 545.

In the instant action, Marquis alleges that Northrop violated the Contract by failing to maintain an organizational structure under which he reported directly to a Vice President and by engaging in various research and marketing projects. In the first instance, the court notes that the Contract was attached to the complaint and that there is no provision in the Contract requiring a Director to report directly to a Vice President. In addition, Marquis has not alleged anywhere in the complaint that the QRC was ever actually used to support systems that were not assigned to the Contract. Thus, although not necessarily subject to resolution at this stage of the proceedings, Marquis' FCA claim would be weak regardless of whether the Government was made aware of the purported Contract violations. *See United State ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818, 836-37 (7th Cir. 2011)(indicating that "[a] statement may be deemed 'false' for purposes of the False Claims Act only if the statement represents 'an objective falsehood,'" and that "[a] mere breach of a contractual duty does not satisfy this standard"). In the instant action, however, Marquis has alleged that "[b]eginning in or around January 2007,

5

[he] informed USAF personnel apprised of developments within the QRC, including those activities which violated the QRC contract." (SA Compl. Par. 33). Northrop has further alleged that "[i]n and around July of 2008, [h]e informed the USAF . . . of the reorganization of the QRC, which was in violation of the QRC contract." (SA. Compl. Par. 47). In addition, Marquis has alleged that Northrop billed and received payments from the USAF between 2006 and 2008, and that "[u]pon information and belief, Northrop continues to bill, and receives payments from, the USAF." (SA Compl. Par. 56). Based upon such facts, Marquis has alleged that the Government paid Northrop under the Contract after acquiring knowledge of and investigating the purported Contract violations. Thus, Marquis has failed to state a valid FCA claim. The court notes that the facts alleged in the complaint leave open the possibility that a claim or claims may have been presented for payment before the Government received notice of the purported Contract violations. However, the complaint does not sufficiently allege that such was the case, which leads the court to the second deficiency in the complaint, Marquis' failure to plead with the particularity required of Federal Rule of Civil Procedure Rule 9(b) (Rule 9(b)).

B. Rule 9(b) Pleading Requirements

An FCA claim sounds in fraud, and is therefore subject to the heightened pleading requirements of Rule (9)(b). *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). To satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must allege the "who, what, when,

where, and how" of the alleged fraud. *Id.* at 605. In the second amended complaint, Marquis presents specific allegations regarding what he contends were Contract violations by Northrop. However, Marquis presents only scant and highly generalized allegations regarding the making of any false claims. Such allegations are not sufficient under Rule 9(b).

Marquis argues that the requirements of Rule 9(b) should be relaxed for him as a *qui tam* relator. However, Marquis was the Director of the QRC throughout the time the alleged events occurred, and Marquis himself alleges that he "was privy to detailed and intimate information concerning the QRC Contract." (SA Compl. Par. 6). Thus, Marquis is appropriately held to the heightened pleading requirements of Rule 9(b).

Marquis also argues that his complaint satisfies Rule 9(b) because it provides enough information to allow Northrop to respond to the allegations. However, "[t]he purpose of requiring that fraud be pleaded with particularity is not . . . to give the defendant in such a case enough information to prepare his defense," but is instead "to force the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469-70 (7th Cir. 1999)(also stating that "[g]reater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual) . . . ; because fraud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it; and because charges of fraud (and also mistake, the other charge that

7

Rule 9(b) requires be pleaded with particularity) frequently ask courts in effect to rewrite the parties' contract or otherwise disrupt established relationships")(citations omitted). As discussed above, Marquis has provided detailed allegations relating to his belief that Northrop violated the Contract. However, Marquis has not provided any specific allegations relating to any claims for payment made to the Government by Northrop. Marquis' failure to include any details relating to any allegedly false claims presented to the Government is fatal to his FCA claim. Therefore, based upon the above, the court grants Northrop's motion to dismiss Count I.

II. Count II

Northrop argues that the retaliation claim brought pursuant to the FCA should be dismissed because Marquis has not alleged that Northrop had knowledge of any protected conduct. To state a valid retaliation claim under the FCA, an employee must allege facts to plausibly suggest "that (1) his actions were taken in furtherance of an FCA enforcement action and were therefore protected by the statute; (2) that the employer had knowledge that he was engaged in this protected conduct; and (3) that the discharge was motivated, at least in part, by the protected conduct." *Brandon v. Anesthesia & Pain Management Associates, Ltd.*, 277 F.3d 936, 944-45 (7th Cir. 2002)(citation and internal quotations omitted). In the instant action, Marquis alleges that on various and repeated occasions beginning in 2006, he reported to various supervisors his belief that Northrop's organizational structure and "acts of seeking new growth in the QSR violated the QSR Contract." (SA Compl.

Par. 30, 37). For example, Marquis alleges that he "expressed concerns" to Northrop that its plans to market the QRC to other customers would violate the Contract. (SA Compl. Par. 10) Marquis further alleges that he notified Northrop that the reorganization of the QRC reporting structure violated the Contract. (SA Compl. Par. 43). In addition, Marquis alleges that he "repeatedly reported contract violations to Northrop, and informed Northrop that it was in violation of the QRC contract through [various] documents." (SA Compl. Par 30). In contrast, Marquis does not allege that he notified Northrop that he believed there was fraud occurring or false claims being made, or that he provided Northrop any facts to suggest a potential lawsuit brewing. Based on such facts, Marquis has not alleged that Northrop had notice of any protected activity. *See United State ex rel. Wildhirt v. AARS Forever, Inc.*, 2011 WL 1303390, at *6 (N.D. Ill. 2011)(dismissing FCA retaliation claims where "the complaint [did] not allege that Relators . . . were investigating facts as a prelude to [a] lawsuit; [ ] that Relators told [defendants] that they were planning a lawsuit, [or] that [defendants] suspected by any other means that a lawsuit was in store"). Therefore, the court grants Northrop's motion to dismiss Count II.

III. Count III

Having resolved the federal claims in this case, the court must determine whether to continue to exercise supplemental jurisdiction over the remaining state law claim. Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state

law claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-252 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts). The Seventh Circuit has indicated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction. . . ." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007). The Seventh Circuit has stated that, in exercising its discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources. . . ." *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994). The court has considered all of the pertinent factors and, as a matter of discretion, the court declines to exercise supplemental jurisdiction over the remaining state law claim. Therefore, the remaining state law claim is dismissed without prejudice.

## CONCLUSION

Based on the foregoing analysis, Northrop's motion to dismiss Counts I and II is granted, and the remaining state law claim is dismissed without prejudice.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 12, 2013